UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-23309-CIV-ALTONAGA

ATLAS IP, LLC,

    Plaintiff,
v.

MEDTRONIC, INC., *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Atlas IP, LLC's ("Atlas['s]") Motion for Summary Judgment that the Asserted Claims of the '734 Patent Are Not Invalid ("Motion") [ECF No. 139], filed August 4, 2014, with a Proposed Statement of Undisputed Facts . . . ("Plaintiff's SMF") [ECF No. 140] and a Declaration of George C. Summerfield ("Summerfield Declaration") [ECF No. 141] containing documents supporting the Motion.  Defendants, Medtronic, Inc.; Medtronic USA, Inc.; and Medtronic Minimed, Inc. (collectively, "Medtronic"), filed a response in Opposition to Atlas's Motion for Summary Judgment . . . ("Response") [ECF No. 160], accompanied by a Response to Atlas's Statement of Undisputed Facts ("Defendants' SMF") [ECF No. 161].  Atlas filed a Reply . . . ("Reply") [ECF No. 184].  On September 11, 2014, the Court heard oral argument on the Motion.  (*See* [ECF No. 213]).  The Court has carefully considered the parties' written submissions, oral arguments, and applicable law.

# I. BACKGROUND[1]

Atlas seeks a summary judgment finding the asserted claims of United States Patent Number 5,371,734, titled "Medium access control protocol for wireless network" (the "'734 Patent") [ECF No. 63-1], are not invalid.[2]  (Mot. 1).

Claim 21 requires the following limitations:

A communicator for wirelessly transmitting frames to and receiving frames from at least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect pre-determined functions comprising:

> designating one of the communicators of the Group as a hub and the remaining the [*sic*] communicators of the Group as remotes [the "designating" limitation];
>
> the hub establishing repeating communication cycles, each of which has intervals during which the hub and the remotes transmit and receive frames [the "establishing" limitation"];
>
> the hub transmitting information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub, and when each remote is expected to receive a frame from the hub [the "transmitting" limitation];
>
> the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the information transmitted from the hub;
>
> the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the information transmitted from the hub;

---

[1] A more detailed factual background is available in the October 8, 2014 Order ("Oct. 8 Order") [ECF No. 243] granting in part and denying in part Medtronic's Motion for Summary Judgment.

[2] The Court's analysis pertains to Claim 21, the only remaining claim in the case.  (*See generally* Oct. 8 Order).

>       the hub transmitting two frames containing information to establish the plurality of predeterminable intervals during each communication cycle, the second frame containing the information to established [sic] the plurality of predeterminable intervals occurring before the intervals in which the remotes are allowed to transmit frames to the hub [the "two frames" limitation].

('734 Patent, col. 50, ll. 39–col. 51, ll. 9 ("Claim 21") (alterations added)).[3] Atlas argues there are no disputed facts Claim 21 is not anticipated, is not obvious, and does not lack written support or enablement. (*See generally* Mot.). The Court addresses each of Atlas's invalidity arguments in turn.

## II. LEGAL STANDARDS

Summary judgment is be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "[A] patent is presumed valid, and this presumption exists at every stage of the litigation . . . . [W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) (alterations added; citations omitted).

## III. ANALYSIS

Atlas asserts it is entitled to summary judgment regarding Medtronic's invalidity challenges, including anticipation under 35 U.S.C. section 102; obviousness under 35 U.S.C. section 103; and lack of written description or enablement under 35 U.S.C. section 112. (*See* Mot. 1).

---

[3] The Court construed the '734 Patent in the related case *Atlas IP, LLC v. St. Jude Medical, Inc.*, No. 14-cv-21006-CMA (S.D. Fla. July 30, 2014) [ECF No. 73] ("July 30 Claim Construction Order").

### A. Anticipation

Atlas argues Claim 21 of the '734 Patent is not invalid as anticipated. (*See* Mot. 3–5; Reply 1–5). A patent is valid if it is not anticipated by prior art in the area. *See* 35 U.S.C. § 102(a). Invalidation based on anticipation "requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Commc'n. Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). A "prior art reference must disclose each and every feature of the claimed invention, either explicitly or inherently." *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375–76 (Fed. Cir. 2006) (citing *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995)). "Anticipation requires clear and convincing proof that a single prior art reference 'not only disclose[s] all of the elements of the claim within the four corners of the document, but . . . also disclose[s] those elements arranged as in the claim.'" *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) (alterations in original) (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)). Anticipation is a question of fact. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 723 (Fed. Cir. 2002) (citation omitted).

The parties' anticipation arguments relate to the establishing limitation of the '734 Patent, described as "the hub establishing repeating communication cycles, each of which has intervals during which the hub and the remotes transmit and receive frames."[4] (Mot. 4 (citing '734 Patent, col. 50, ll. 52–54)). Atlas argues the prior art references identified by Medtronic's expert, Mark Lanning ("Lanning"), do not anticipate Claim 21 of the '734 Patent. (*See* Mot. 1). According to

---

[4] The parties' briefing related to the July 30 Claim Construction Order did not specifically request claim construction of the establishing limitation, including the phrase "each of which," a phrase now disputed. Regarding this limitation, the Court construed the words "the hub establishing repeating communication cycles" to mean "the hub defining in advance the starting time and duration for each repeating communication cycle" (July 30 Claim Constr. Order 12), with each communication cycle being "a series of intervals for outbound and inbound communications" (*id.* 10 n.3).

Atlas, the Patent requires prior art references disclose the establishing limitation to anticipate Claim 21. (*See* Mot. 4).

As a preliminary matter, the parties dispute how the establishing limitation should be defined. Atlas contends the plain meaning of the establishing limitation is "each communication cycle includes at least one interval in which at least one remote transmits a frame to the hub." (Reply 2). Medtronic insists Atlas makes a new claim construction argument by improperly modifying the claim language with the term "must" to convey "each communication cycle having intervals during which the hub and remotes *must* transmit and receive frames." (Resp. 7 (emphasis in original; citation and internal quotation marks omitted)). Courts generally give claim terms their plain and ordinary meaning. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)).

The Court previously stated, "the hub defines in advance the starting time and duration for each repeating communication and transmits to the remotes the information necessary to know these starting times and durations. Each communication cycle has intervals during which the hub and the remotes transmit and receive frames." (July 30 Claim Constr. Order 14 (citations and internal quotation marks omitted)). In other words, each communication cycle has intervals (specifically, two or more intervals) (*see id.* 13–14), and "the hub and the remotes transmit and receive frames" during the intervals ('734 Patent, col. 50, ll. 53–54). The plain meaning necessitates the hub and the remotes transmit and receive frames during each communication cycle, not that the hub and the remotes simply *may* do so during a communication cycle as Medtronic argues. (*See* Resp. 7).

A prior art reference needs to disclose each claim limitation, including the establishing

limitation discussed. Turning to the prior art references at issue, Medtronic's expert opines the following nine references anticipate the asserted claims of the '734 Patent (*see* Mot. 2 (citing Summerfield Decl., Ex. B, Expert Report of Mark Lanning Regarding Invalidity . . . ("Lanning Report"), June 9, 2014 [ECF No. 141-2])):

**Prior Art References**

|   | **Patent/Reference** | **United States Patent Number** | **Date** | **Repeating Communication Cycle Identified by Lanning** |
|---|---|---|---|---|
| 1 | Sheldon L. Gilbert, *et al.*, "Reservation-based Polling Protocol for a Wireless Data Communications Network" ("Gilbert") [ECF No. 141-10] | 5,297,144 | Mar. 22, 1994 | (*See* Gilbert, Figure 3; *see also* Pl.'s SMF ¶ 21; Defs.' SMF ¶ 21). |
| 2 | Alfred B. Wieczorek, *et al.*, "Energy Saving Protocol for a TDM Radio" ("Wieczorek") [ECF No. 141-11] | 5,150,361 | Sept. 22, 1992 | (*See* Wieczorek, Figure 4, Channels A & B; *see also* Pl.'s SMF ¶ 22; Defs.' SMF ¶ 22). |
| 3 | Morris A. Moore, "Battery Saver for a TDM System" ("Moore") [ECF No. 141-12] | 4,964,121 | Oct. 16, 1990 | (*See* Moore, Figure 4a, Block 300; *see also* Pl.'s SMF ¶ 23; Defs.' SMF ¶ 23). |
| 4 | Peter J. Mabey, *et al.*, "Power Economising in Multiple User Radio Systems" ("Mabey") [ECF No. 141-13] | 5,175,870 | Dec. 29, 1992 | (*See* Mabey, Figure 2; *see also* Pl.'s SMF ¶ 24; Defs.' SMF ¶ 24). |
| 5 | Brian D. Neve, *et al.*, "Communication System" ("Neve") [ECF No. 141-14] | 4,887,266 | Dec. 12, 1989 | (*See* Neve, Cyclical repeating time slots; *see also* Pl.'s SMF ¶ 25; Defs.' SMF ¶ 25). |
| 6 | Shigeru Otsuka, "Power Saving System for Time-Division Multiple Access Radiocommunication Network" ("Otsuka") [ECF | 4,577,315 | Mar. 18, 1986 | (*See* Otsuka, Figure 5; *see also* Pl.'s SMF ¶ 26; Defs.' SMF ¶ 26). |

6

| | | | | |
|---|---|---|---|---|
| | No. 141-15] | | | |
| 7 | Kadathur S. Natarajan, *et al.*, "Battery Efficient Operation of Scheduled Access Protocol" ("Natarajan") [ECF No. 141-16] | 5,241,542 | Aug. 31, 1993 | (*See* Natarajan, Figure 4; *see also* Pl.'s SMF ¶ 27; Defs.' SMF ¶ 27). |
| 8 | Kadathur S. Natarajan, *et al.*, "Medium Access Control Protocol for Wireless LANs (An Update)" ("Natarajan article") [ECF No. 141-17] | N/A | Mar. 9, 1992 | (*See* Natarajan Article, Figure 1; *see also* Pl.'s SMF ¶ 28; Defs.' SMF ¶ 28). |
| 9 | Richard W. Baker, "Pacemaker Programmer with Telemetric Functions" ("Baker") [ECF No. 141-18] | 4,550,370 | Oct. 29, 1985 | (*See* Lanning Dep. 70:2–5; *but see* Resp. 15 (citing Lanning Report 54); *see also* Pl.'s SMF ¶ 20; Defs.' SMF ¶ 20). |

Atlas stresses each of the prior art references, except the Baker reference, does not disclose the establishing limitation. (*See* Mot. 4). Medtronic concedes Lanning stated "[i]t is possible to have a communication cycle . . . where no frames are sent from the remotes to the hub" in eight of the nine prior art references. (Pl.'s SMF ¶ 29 (alterations added) (citing Summerfield Decl., Ex. M, Oral Deposition Mark Lanning ("Lanning Deposition"), July 17, 2014, 45:19–22 [ECF No. 141-20]); Defs.' SMF ¶ 29; *see* Pl.'s SMF ¶¶ 30–36 (citations omitted); Defs.' SMF ¶¶ 30–36). Medtronic does not refute these eight prior art references fail to anticipate the plain meaning of the establishing limitation — that the hub and the remotes transmit and receive frames during each communication cycle.[5] (*See* Resp. 6–14; Reply 1–4).

Medtronic's only argument is a prior art reference need not invalidate under all embodiments or anticipate all of the time in order to invalidate. (*See* Resp. 11). Medtronic compares this case to *Upsher-Smith Labs, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1320–21 (Fed.

---

[5] Medtronic's Response focuses on claim construction of the establishing limitation.

7

Cir. 2005), in which "a prior art composition that optionally includes an ingredient anticipates a claim for the same composition that expressly excludes that ingredient." (Resp. 11 (internal quotation marks omitted) (quoting *Upsher-Smith Labs, Inc.*, 412 F.3d at 1320–21)). That case, involving ingredients in a vitamin supplement, is distinguishable. *See Upsher-Smith Labs, Inc.*, 412 F.3d at 1322 (analyzing whether a vitamin patent that contains every element of the asserted claim except the limitation, "essentially free of antioxidants" — because it optionally includes antioxidants — anticipated a vitamin patent that generally excluded antioxidants). Here, the establishing limitation is a key component of how the technology operates, and the limitation expressly requires that the hub and the remotes transmit and receive frames during each communication cycle. (*See* Reply 4–5). As "[a]nticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference[,]" *Zenith Elecs. Corp.*, 522 F.3d at 1363 (alterations added), Medtronic's interpretation that a prior art reference need only disclose "in at least some situations" to anticipate the asserted claim fails to persuade (Resp. 11). The eight prior art references identified by Medtronic thus do not anticipate each limitation of Claim 21.

Regarding the ninth Baker prior art reference, Atlas argues Lanning did not identify repeating communication cycles for the Baker reference. (*See* Mot. 4). Further, Atlas contends Lanning failed to identify a medium access control protocol, a required limitation to anticipate Claim 21. (*See id*. 3–4). For support, Atlas cites Lanning's Deposition testimony (*see* Reply 5):

> Q: What are the communication cycles you've identified in Baker?
>
> A: Baker only identifies at most one cycle. There is [sic] not two cycles identified by Baker.

(Lanning Dep. 70:2–5 (alteration added)).

Nevertheless, Medtronic argues Lanning stated in his Report "the programmer and

8

pacemaker disclosed in Baker communicate during predeterminable intervals of time in repeating communication cycles using a switching circuit and a voltage-controlled oscillator." (Resp. 15 (emphasis omitted) (quoting Lanning Report 54)). Although Lanning's Report cites to certain sections of the Baker Patent in an effort to demonstrate Baker's claims satisfy the repeating communication cycle limitation (*see* Resp. 16 (citing Baker, col. 13, ll. 36–52)), nothing in those sections of the Patent expressly identifies repeating communication cycles in Baker (*see* Baker, col. 13, ll. 36–52). Lanning's statement that Baker has repeating communication cycles seems rather conclusory. Further, the only evidence in support of Medtronic's position is from Lanning's Report, which Atlas argues is unsworn and cannot be relied upon in summary judgment. (*See* Reply 5 (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003)). At the September 24 hearing, Medtronic admitted as much.[6] (*See* Sept. 24, 2014 Hr'g Tr. 160:5–20). As a result, Medtronic has not established a genuine issue of material fact.[7]

Thus, even if Baker discloses a medium access control protocol, it does not disclose the repeating communication cycle limitation. Accordingly, the nine prior art references do not anticipate each of Claim 21's limitations, and Atlas is entitled to summary judgment on the invalidity challenge of anticipation.

### B. Obviousness

"An obviousness inquiry assesses 'the differences between the subject matter sought to

---

[6] Medtronic stated, "We have cited an unsworn report. I would disagree that we are relying on it. And that's our only evidence of that limitation." (Sept. 24, 2014 Hr'g Tr. 160:7–9). Medtronic did not cite to other evidence in its briefing or in oral argument regarding the Baker reference.

[7] Even if the evidence in Lanning's Report can be submitted in an admissible form at trial, *see Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294–95 (11th Cir. 2012), the inconsistent statements in Lanning's Deposition and Report — both made by Medtronic's own expert — cannot be used to manufacture a triable issue of fact to avoid summary judgment in favor of Atlas.

be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002) (quoting 35 U.S.C. § 103(a) (1994)). A determination of obviousness considers the following "underlying factual inquiries": "'(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness.'" *Id.* at 725–26 (quoting *In re Dembiczak*, 175 F.3d 994, 998, (Fed. Cir. 1999)). "Obviousness is a question of law . . . premised on underlying factual determinations." *Id.* at 722 (alterations added; internal and other citations omitted). "[A] district court properly may grant summary judgment on obviousness or anticipation only when the underlying factual inquiries present no lingering genuine issues." *Id.* at 723 (alteration added).

Atlas argues the asserted claim is not obvious because eight of the nine prior art references do not disclose the establishing limitation, and there is no evidence any combination of references is specifically intended to satisfy this limitation. (*See* Mot. 5). Medtronic's Response does not separately discuss obviousness. Only Lanning's Report discusses several "obvious combinations of the prior art" references that Medtronic argues render the asserted claims invalid. (Lanning Report ¶ 161). The Court, however, does not rely on Lanning's unsworn Report.

Even if the Court were to consider Lanning's Report, the combinations he cites do not address the establishing limitation. (*See id.* 66–76). As Atlas observes, "Medtronic does not dispute that its expert, Mark Lanning, has failed to identify any combination of references that uniquely satisfies the limitation 'communication cycles, each of which has intervals during

which the hub and the remotes transmit and receive frames.'" (Reply 5). For the same reasons the nine prior art references do not anticipate Claim 21 of the '734 Patent, they are not obvious and no genuine issues of material fact exist precluding summary judgment in favor of Atlas on the issue of obviousness.

### C. Written Description and Enablement

Pursuant to 35 U.S.C. section 112(a), "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." *Id.* (alteration added). The statute requires "two separate description requirements: a 'written description [i] of the invention, *and* [ii] of the manner and process of making and using [the invention].'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (alterations and emphasis in original) (quoting 35 U.S.C. § 112, ¶ 1). The "written description requirement [is] separate from enablement . . . ." *Id.* at 1345. "A determination that a patent is invalid for failure to meet the written description requirement of 35 U.S.C. [section] 112, [paragraph one] is a question of fact . . . ." *Id.* at 1355 (alterations added). "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citation and internal quotation marks omitted). This inquiry is a question of law based on underlying facts. *See id.* (citation omitted). Because a patent is presumed valid, "lack of enablement must be proven by clear and convincing evidence." *Id.* (citations omitted).

Medtronic argues Atlas's Motion regarding written description should be denied. (*See* Resp. 16). In particular, Lanning identified the following claim limitations as not being supported by the specification:

> (1) [a] communicator for wirelessly transmitting frames to and receiving frames from a [sic] least one additional communicator, or communication systems involving only one remote; (2) designating one of the communicators of the Group as a hub and the remaining the [sic] communicators of the Group as remotes; (3) the hub allocating a number of transmission opportunities during at least one communication cycle which is at least one less in number than the number of remotes in the Group; (4) the hub establishing repeating communication cycles, each of which has intervals during which the hub and the remotes transmit and receive frames; and (5) the hub assigning transmission opportunities to the remotes.[8]

(Resp. 16 (alterations in original) (quoting Lanning Report 77–81)).

According to Atlas, "original claims are part of the specification and in many cases will satisfy the written description requirement." (Mot. 6 (citing *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011))). Atlas stresses Lanning does not recall whether he considered the original claim language in opining on the written description requirement. (*See id.*; Pl.'s SMF ¶ 44; Def.'s SMF ¶ 44). Yet Medtronic insists "'[i]f a purported description of an invention does not meet the requirements of the statute, the fact that it appears as an original claim or in the specification does not save it.'" (Resp. 16 (alteration added) (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968–69 (Fed. Cir. 2002))). *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) ("While it is true that an originally filed claim can provide the requisite written description to satisfy section 112, . . . nothing in claim 21 or the specification constitutes an adequate and enabling description of all seamless DWTs." (alteration added; internal citation

---

[8] The Court does not consider the third and fifth limitations (found in Claims 6 and 11), as they are not applicable to Claim 21 (or the preamble).

omitted)). The Federal Circuit has found "a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification." *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (citation omitted). In this case, that the original claims are included in the specification, without more, is not sufficient to satisfy the written description requirement. *See Enzo Biochem, Inc.*, 323 F.3d at 968–69.

Medtronic raises two arguments why summary judgment is inappropriate: Atlas fails to provide any evidence demonstrating the disputed limitations are supported by the '734 Patent; and genuine issues of material fact exist as to whether the written description requirement is satisfied for the asserted claim because the parties' experts disagree whether the written description and enablement requirements are satisfied. Medtronic's reasoning is persuasive. Beyond stating the limitations were contained in the claims as originally filed in the '734 Patent, Atlas does not provide additional support "the disclosure clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Crown Packaging Tech., Inc.*, 635 F.3d at 1380 (alterations in original; internal quotation marks omitted) (quoting *Ariad Pharms., Inc.*, 598 F.3d at 1351). Although the '734 Patent is presumed valid, Atlas, as the moving party, has not sufficiently rebutted Medtronic's invalidity challenge.

Neither the Lanning Report nor Atlas's rebuttal expert report of J. Nicholas Laneman ("Laneman Rebuttal Report") [ECF No. 160-4], is a sworn report. (*See* Resp. 19 n.5; Reply 6). Nonetheless, Medtronic demonstrates a genuine issue of material fact by submitting evidence that may be supplied in admissible form at trial. *Cf. Macuba v. Deboer*, 193 F.3d 1316, 1324 n.18 (11th Cir. 1999) (explaining on summary judgment a district court could consider evidence submitted to establish a genuine issue of material fact where the evidence "could later be given in admissible form (by the doctor testifying at trial"); *see also Jones*, 683 F.3d at 1294–95

("'[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form[,]'" such as having the "declarant testify directly to the matter at trial." (alterations added; citations omitted)). The parties' experts may both testify at trial. Beyond observing the expert reports are unsworn, neither party has challenged the admissibility of the expert testimony nor presented any reason why Lanning's or Laneman's expert testimony would not be admissible at trial.

In considering this evidence, the experts disagree about the limitations' written descriptions, creating disputed factual issues. (*See* Resp. 19–20). For example, Lanning and Laneman dispute the adequacy of the written description for Claim 21's designating limitation. (*See id.* (comparing Lanning Report 79 ("[T]here is no disclosure of a system where the hub and remote could not serve the alternate function." (alteration added)), with Laneman Rebuttal Report 51–52 ("The issue as I understand it is not whether the hub and remote 'could' serve alternate functions, but whether such devices must be able to serve such function . . . . [I]t is clear that the invention contemplates a 'hub' that only functions as a hub . . . . None of the asserted claims contain these limitations regarding the conversion of a hub to a remote, and vice versa . . . . As the 'designating' language was also part of the claims as originally filed, in my opinion, such language would satisfy the written description requirement." (alterations added))). The experts also disagree on the first limitation found in the preamble and the establishing limitation.[9] (*See id.* 18–21).

Finally, Atlas contends Lanning's testimony that the asserted claim is not enabled is conclusory, explaining Lanning failed to consider the length of time it would take to practice the

---

[9] As discussed in the October 8 Order, a trier of fact may find the accused hubs have the capability to establish a communication cycle as set out in the establishing limitation. (*See* Oct. 8 Order 21).

asserted claim, and whether that amount of time was "undue." (Mot. 7). Nonetheless, for the same reasons summary judgment is inappropriate regarding written description, it is likewise inappropriate as to enablement. Atlas has not presented sufficient evidence it satisfies enablement, precluding summary judgment. (*See* Resp. 20). Further, because factual issues remain regarding written description, granting summary judgment as to enablement would be improper where the two issues involve many of the same underlying facts and "usually rise and fall together," *LizardTech, Inc.*, 424 F.3d at 1345, even if they involve separate analyses. (*See* Resp. 20; Reply 6). While Medtronic has the burden of proof to demonstrate invalidity at trial, Atlas as the moving party has failed to satisfy its burden to establish no factual issues remain regarding written description or enablement in order to succeed on its summary judgment motion.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Atlas's Motion for Summary Judgment **[ECF No. 139]** is **GRANTED in part** and **DENIED in part**. Summary judgment on invalidity of Claim 21 is granted in Atlas's favor as to anticipation and obviousness and is denied as to written description and enablement.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of October, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record